**UNITED STATES of America,
Appellee,**

v.

**James Rufus DAVIS, Defendant-
Appellant.**

**No. 354, Docket 28681.**

United States Court of Appeals
Second Circuit.

Argued Feb. 14, 1964.

Decided March 5, 1964.

Leon B. Polsky, New York City (Anthony F. Marra, New York City), for appellant.

Martin R. Gold, New York City (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York) (James M. Brachman, Asst. U. S. Atty.), for the United States of America.

Before LUMBARD, Chief Judge, and WATERMAN and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge:

This was a typical narcotics prosecution for violating and conspiring to violate 21 U.S.C. §§ 173 and 174. The Government's evidence, presented through agent Broadnax and a surveilling agent, was to the following effect: Broadnax and an informant met one Ivey on W. 115th St. near Lenox Ave. about 12:30 P.M. on February 14, 1961. When Broadnax was represented to be interested in buying heroin, Ivey told him to go to the Regent Restaurant nearby to await Ivey's arrival. Ivey then went to a building at 114 W. 115th St. which he left in the company of appellant Davis and a female known as "Dot." The two groups met at the Regent Restaurant, where they sat on opposite sides of a horseshoe

bar. After Ivey told Broadnax he had an ounce of heroin for sale for $175, Davis came over and asked Broadnax to enter the men's room. Davis there handed him a glassine envelope containing some 11½ grams of heroin and received the $175. On leaving the men's room Davis gave this to Ivey, who solicited further business from Broadnax and, in Davis' presence, wrote on a brown paper bag the address 114 W. 115th St., apartment 1-E, and the word "Dot." Ivey, Davis and Dot then left the restaurant and returned to 114 W. 115th St. Davis denied the entire story, except that he admitted being acquainted with Ivey and having been a frequent patron of the restaurant.

■ Davis' argument that his "possession" was insufficient to trigger the familiar provision in 21 U.S.C. § 174, whereby possession of narcotics "shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury," is insubstantial in view of the evidence of his furtive men's-room exchange of a glassine envelope containing white powder for the suspiciously high sum of $175. This was entirely sufficient to warrant the jury's finding that he knew the substance to be a narcotic, and it is hard to see how any possession could be more purposive than one incident to delivery and collection of the price. Cf. United States v. Barrington, 291 F.2d 481 (2 Cir. 1961). Beyond this the appeal is directed at several aspects of the charge—none of which, with one qualification noted below, was made the subject of exception, as F.R.Crim.Proc. 30 requires.

■ We start with the instructions as to the statutes. The judge first explained that 21 U.S.C. § 173 prohibits the importation of narcotics save under government regulations; in the course of doing this he said "Narcotics of this nature are not indigenous to this country. They must, of course, be brought in from some other country, and for that reason this particular section was passed by the Congress to prevent the importation of these narcotics except for legitimate purposes." This is claimed to have taken the issue of illegal importation from the jury. But the judge later told the jury on two occasions that in order to convict they must find precisely that. It is evident that the remarks now criticized, but not then objected to, were intended and taken merely as an explanation of the general background of the statute and not as a curtailment of the jury's freedom to decide on illegal importation—on which, in accordance with usual practice, no evidence was submitted by either side. We are asked also to find "plain error," F.R.Crim.Proc. 52 (b), in an instruction "that when narcotics are found in the possession of someone, unless they come forward and prove to you that something other than this particular state or condition exists, namely, that the narcotics are imported or there is other evidence in the case to indicate otherwise, then there is a difference, but until that happens the government has the right to rely on the presumption that in fact it was imported, and that the defendant knew that it was imported." This charge was far from ideal, and we cannot understand why, if it is deemed desirable to embroider on the clear language of the statute, a standard instruction conforming precisely to its interpretation in such cases as United States v. Mont, 306 F.2d 412, 416–17 (2 Cir.), cert. denied, 371 U.S. 935, 83 S.Ct. 310, 9 L.Ed.2d 272 (1962), and United States v. Evans, 312 F.2d 556 (2 Cir. 1963), is not prepared and followed. That would avoid appeals, like this one, on an aspect of the offense that is almost never litigated since the Government generally relies entirely on the proof of possession and the defendant denies he ever had it. However, in contrast to Evans, the judge here had earlier made the completely correct statement that "the possession of the narcotic gives you the right to infer that the narcotics were imported contrary to law, and further gives you a right to infer that the

defendant, if you find that in fact he had possession, had knowledge of such unlawful importation"; and the challenged statement that "the government has the right to rely" etc. must be read in that light. If defendant's trial counsel had thought the two statements to be inconsistent and the later one to be prejudicial, it was for him to bring his objection to the court's attention, as was done in the Evans case where counsel specifically objected to the instruction that "the defendant was charged with the explaining and coming forward and the charge of possession."

■■ Defense counsel had sharply cross-examined the agents and in an effective summation stressed the failure to make an immediate arrest and the absence of proof of the withdrawal of official funds—an argument that was not unpersuasive in view of the span of 18 months between offense and indictment and of nearly another year between indictment and trial. The prosecutor began his response by saying "If this defendant is innocent it means that the government agents of the Federal Bureau of Narcotics are liars, perjurers, and that they framed this defendant," a phrasing which we have encountered in other narcotics appeals and seems to us to go somewhat beyond the proprieties in the absence of greater provocation than existed here, but to which no objection was made. After telling the jury that "The nub of the case" was a "question of credibility" of the witnesses, the judge instructed that "Interest has always been something that a juror looks into very carefully * * *," that the agents "have a pride of performance" and "want to show that what they say is so because by the very nature of their work it is important to them," along with other remarks similar in tenor, and

that the defendant also "has a great deal of interest in this case because should he be found guilty of this charge he will, of course, be punished * * *." He declined, as having been adequately covered, a subsequent oral request to charge that testimony of an agent or officer should not be given weight simply because of his office, "in other words, an officer can make a mistake on occasion, too." Appellate counsel claims the instruction put a stamp of approval on the agents which the requested additional charge was needed to remove. We do not so read it; taken in context, it was designed rather to advise the jury that the agents had a personal interest in securing Davis' conviction as he had in avoiding it.

■ Even stronger objection is made that the judge defined a "reasonable doubt" as one for which, when asked what it is by a fellow juror, "you can give a reason, then that indicates that it is a reasonable doubt * * *." Such a charge, it is argued, might intimidate a juror by suggesting that he may be called upon to explain his doubts, although it surely does not require him to justify them. When a similar charge was first challenged in this court a half century ago, the attack was termed "hypercritical." Marshall v. United States, 2 Cir., 197 F. 511, 512–513, cert. denied, 226 U.S. 607, 33 S.Ct. 112, 57 L.Ed. 379 (1912). But for subsequent judicial commentary, we should be inclined to agree; the illustration seems to put the point to jurors rather more intelligibly than the usual instruction,[1] half of which defines the phrase in terms of itself while the other half attempts to explain it by negatives. The objection that the judge's illustration demands not mere formulation of the doubt but some attempt at articulation seems, as the Gov-

---

1. We take the following as representative of the safe but somewhat uninformative conventional instruction:

"It is a doubt based on reason which arises from the evidence or lack of evidence. It is a doubt which a reasonable man or woman might entertain. It is not a fanciful doubt; it is not an imagined doubt; it is not a doubt that a juror might conjure up in order to avoid performing an unpleasant task or duty. Let me repeat, it is a reasonable doubt."

ernment points out, rather inconsistent with the "Allen charge," Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896), advising each of the jurors, at a time when the court knows that at least some do have a reasonable doubt, to consider the reasonableness of a doubt "which made no impression upon the minds of so many men, equally honest, equally intelligent with himself." Later decisions by this court have held that the instruction here given is "not approved" and "perhaps unwise" but is "not erroneous." United States v. Woods, 2 Cir., 66 F.2d 262, 265 (1933); United States v. Farina, 2 Cir., 184 F.2d 18, cert. denied, 340 U.S. 875, 71 S.Ct. 121, 95 L.Ed. 636 (1950); United States v. Klock, 2 Cir., 210 F.2d 217, 223–224 (1954); United States v. Owens, 2 Cir., 263 F.2d 720, 723 (1959); United States v. Eury, 2 Cir., 268 F.2d 517 (1959). That seems a good place to leave it, especially in a case where no objection was made.

Affirmed.