**UNITED STATES of America,**
**Appellee,**

v.

**Leonard AIKEN, Charles Cole, Leroy**
**Davis and Clifford Rogers,**
**Appellants.**

**No. 264, Docket 30792.**

United States Court of Appeals
Second Circuit.

Argued Jan. 6, 1967.

Decided Feb. 20, 1967.

Robert G. Morvillo, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty. for Southern District of New York, and Stephen F. Williams and John E. Sprizzo, Asst. U. S. Attys., New York City, on the brief), for appellee.

James J. Hanrahan, New York City, for appellant Leonard Aiken.

Theodore Krieger, New York City (William C. Chance, Jr., New York City, on the brief), for appellant Charles Cole.

John R. Sanders, New York City, for appellant Leroy Davis.

Irwin Klein, New York City, for appellant Clifford Rogers.

Before LUMBARD, Chief Judge, and FRIENDLY and HAYS, Circuit Judges.

LUMBARD, Chief Judge:

The appellants Leonard Aiken, Leroy Davis, and Clifford Rogers were convicted after a lengthy trial before Judge Cannella and a jury in the Southern District of New York of conspiracy to violate 42 Stat. 596 (1922), as amended, 21 U.S.C. § 173, and 70 Stat. 570 (1956), 21 U.S.C. § 174, prohibiting the knowing receipt, concealment, or sale of any narcotic drug illegally imported into the United States. Appellant Davis was also convicted on one count charging substantive violations of 21 U.S.C. §§ 173, 174. The appellant Charles Cole, as to whom the conspiracy count was dismissed at the close of the trial, was convicted of substantive violations on two other counts. Appellant Aiken was sentenced to 25 years imprisonment and a $20,000 fine, Cole to 10 years and a $10,000 fine, Davis to 15 years and a $25,000 fine, and Rogers to 6 years and a $5,000 fine.[1]

■ The evidence at trial, most of it by accomplices, viewed most favorably to the government as it must be upon appeal from convictions, showed that appellant Aiken was the head and appellant Davis the second in command of an organization engaged in large-scale distribution of narcotics in New York City during 1963 and 1964. One Edward Walker testified that between January and March 1963 he helped Davis pick up two foot lockers of narcotics in the Bronx while Aiken maintained surveillance, several times helped Aiken or Davis deliver narcotics, and on Aiken's instructions carried narcotics given him by Davis to an apartment in Chicago. Henderson, one of the severed defendants, testified that he approached Aiken in March 1963 to buy narcotics and was introduced to Davis, who sold him some narcotics and then introduced him to the defendant Bivens, who sold him narcotics through the summer of 1963. In September 1963, Henderson stated, he bought a half ounce of heroin from Davis and resold it to an individual who turned out to be an undercover agent of the Bureau of Narcotics. This testimony was corroborated by the agent, who saw Henderson meet Davis at a bar on Eighth Avenue, leave with him for a few minutes, and return with the heroin, and formed the basis for Davis' conviction on count 2. Henderson continued to obtain narcotics from Aiken and Davis through early 1964.

Spratley, another severed defendant, testified that he purchased narcotics from Davis on three occasions between

---

1. The defendant Webster Bivens, whose appeal is pending, was convicted on the conspiracy count and of two substantive violations, and the defendant Nolan Johnson was acquitted on the conspiracy count. The remaining defendants, George Henderson, Ronald Scott, and Raymond Spratley, each charged with conspiracy and a substantive violation, were severed and testified for the government.

March and May 1964, the last of which was charged in count 5, of which Davis was acquitted. Scott, the third severed defendant, testified that in May 1964 he applied to Aiken "to deal in some narcotics," was given some money and introduced to Davis, and after two months received some narcotics from Davis. A few days later, just after arranging to sell an undercover agent over a half kilo of heroin to be obtained from Davis, Scott was arrested. None of the defendants testified, but they called witnesses to attack the accomplices' credibility and Scott's account of receiving money from Aiken.

The evidence linking appellant Rogers to the conspiracy was furnished by one witness, John Shands. Shands arrived in New York City in April 1964, and began to deliver narcotics and collect "approximately $150" for Rogers two or three times a week. In July 1964 Rogers entered a bar on Amsterdam Avenue with a bag, emerged without it, and went with Shands to a bar on St. Nicholas Avenue where they met Davis, who told them that a package of narcotics (which they later bagged and distributed) was hidden over the sun visor of their car. In September 1964, after Rogers told Shands that he was going to obtain narcotics that night, they met Davis in a bar. Rogers tried on Davis' coat, and after leaving the bar removed a package of narcotics from his pocket. Shands also testified that on one occasion between April and October 1964 he diluted narcotics for Davis.

Most of the testimony regarding appellant Cole came from Henderson. Henderson purchased narcotics from Cole during April through August 1963. (As Judge Cannella noted in dismissing the conspiracy count against Cole, Henderson's testimony at this point was expected to link Cole to Aiken.) On April 15, 1964, Henderson, now acting as an informant, introduced Cole to an undercover agent, paid Cole $500 obtained from the agent, and was told to look under the steps at a named address, where the agent found a package of heroin. This transaction and a similar one effected on April 23, 1964, both corroborated by the undercover agent and an observing agent, were the subject of the two substantive counts of which Cole was found guilty. Cole's defense was designed to suggest that Henderson himself planted the narcotics on both occasions.

We shall consider first the contentions, made or adopted by all appellants, that: (1) the witness Shands' assertion of his privilege against self-incrimination produced reversible error; (2) the witness Walker was improperly allowed to assert his privilege during cross-examination; (3) the trial court failed to explain the presumption of knowledge of illegal importation from proof of possession of a narcotic drug established by 21 U.S.C. § 174; (4) the trial court failed to charge that the jury should acquit if it found multiple conspiracies; and (5) the charge erroneously defined reasonable doubt.

Appellant Cole also argues that the substantive counts against him should have been severed after dismissal of the conspiracy count as to him, and that he should have been allowed to reopen the case just before summations to present a fresh witness. Appellant Rogers urges that there was insufficient evidence to support his conviction on the conspiracy count.

I.

Appellants' first contention is that the government's calling and questioning of Shands led to reversible error. Shands asserted his privilege against self-incrimination twice during his first day of testimony, both times when asked what he delivered for Rogers, and to numerous questions he responded that he did not remember. On the next day of trial, he interposed his privilege to the first six questions asked. The government was granted a continuance, during which it requested and obtained immunity for Shands under 70 Stat. 574 (1956), 18 U.S.C. § 1406. Shands thereupon gave the responsive testimony that we have summarized, and was subjected to searching cross-examination.

Appellants argue that reversal is required both by the natural inference from Shands' assertion of the privilege, citing United States v. Maloney, 262 F.2d 535 (2 Cir. 1959), and by the alleged fact that his hesitation made him appear afraid of them. But as the Supreme Court stated in Namet v. United States, 373 U.S. 179, 186–187, 83 S.Ct. 1151, 1154, 10 L.Ed.2d 278 (1963), a witness' assertion of his privilege has been held reversible error only where "the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege," as in United States v. Maloney, supra, or where "a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination." See Douglas v. State of Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Here the Assistant United States Attorney stated on the record that he had "no inkling" that Shands would invoke his privilege. Moreover, appellants were not prejudiced by inferences not subject to cross-examination, because after Shands received immunity he gave direct testimony against Rogers and Davis and was extensively cross-examined. Finally, any apparent fear of appellants on Shands' part seems quite immaterial in view of the fact that he did testify against appellants.

Appellants also complain that Walker was allowed to assert his privilege not to answer questions put to him on cross-examination regarding federal and state narcotics charges pending against him. As Walker had already admitted the pendency of the charges and a prior conviction, Judge Cannella did not abuse his discretion by sustaining these assertions of the privilege. United States v. Kahn, 366 F.2d 259, 265 (2 Cir.), cert. denied, 385 U.S. 948, 87 S.Ct. 324, 17 L.Ed.2d 226 (1966); United States v. Irwin, 354 F.2d 192, 198 (2 Cir. 1965), cert. denied, 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966).

Appellant Aiken argues that the adjournment of his preliminary hearing for over a month, after which he was indicted, violated his rights. However, there is no showing that the adjournments improperly affected his ability to defend against the charges, and the indictment sufficed to establish probable cause for detention (or, in his case, requiring bail). United States v. Heap, 345 F.2d 170 (2 Cir. 1965). The remaining contentions of appellants Aiken and Davis, except those directed at the trial court's charge, are frivolous.

Appellants' first attack on the court's charge is that after outlining the elements of illegal importation and knowledge by the defendants of illegal importation under 21 U.S.C. § 174, the trial court read to the jury the paragraph of that section providing that possession of a narcotic drug "shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury," but did not go on to explain that "the jury, despite proof of possession, may find that one of those elements was lacking." United States v. Evans, 312 F.2d 556 (2 Cir. 1963); see United States v. Mont, 306 F.2d 412 (2 Cir.), cert denied, 371 U.S. 935, 83 S.Ct. 310, 9 L.Ed.2d 272 (1962). When the Assistant United States Attorney suggested that such an explanation be added, the trial court stated that it was relying upon our intimation in United States v. Davis, 328 F.2d 864, 866 (2 Cir. 1964), that the language of the last sentence of section 174 may be read without clarification. One defense counsel commented, "It's safer that way," and none of his colleagues made any objection.

After the trial of this case, we recommended in United States v. Armone, 363 F.2d 385, 392 (2 Cir.), cert. denied, 385 U.S. 957, 87 S.Ct. 398, 17 L.Ed.2d 303 (1966), following the "better practice" suggested in United States v. Gainey, 380 U.S. 63, 71 n. 7, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965), that the jury be told simply that it may infer the elements of the section 174 offense from proof of possession of a narcotic drug unless the evidence provides a satisfactory ex-

planation of the possession, without any explicit reference to the language of the statute.

■■ This does not mean that the trial court's failure to explain the inference permitted by section 174 was such plain error, Fed.R.CrimP. 52(b), as to require reversal despite the absence of objection at trial. We hold that it was not, especially as defense counsel failed to object after the point was specifically raised by the government, and also because the issue contested at trial was whether the appellants had dealt in narcotics at all, not whether the narcotics had to their knowledge been illegally imported. Cf. United States v. Sorenson, 330 F.2d 1018 (2 Cir. 1964), cert. denied, 380 U.S. 945, 85 S.Ct. 1027, 13 L.Ed.2d 963 (1965); United States v. Davis, supra. Compare United States v. Llanes, 374 F.2d 712 (2 Cir. 1967). Appellants' alternative contention that the reading of the sentence of section 174 constituted comment on their failure to testify is without merit, since the trial court specifically charged that their failure to testify should not influence the jury's deliberations, and its reading of the statutory language without comment could not fairly be interpreted as an "allusion [or] innuendo based on [their] decision not to take the stand," United States v. Gainey, supra at 71, 85 S.Ct. at 759. Cf. United States v. Armone, supra at 392–393; Cloud v. United States, 361 F.2d 627 (8 Cir. 1966).

■ Appellants next claim as error the trial court's failure expressly to charge the jury that multiple conspiracies were not within the ambit of the indictment. The court in its charge twice stressed, however, that the government alleged a single conspiracy, and added that it must show that each defendant was "a knowing part of it." Thus the jury could not have thought that it might convict if it found multiple conspiracies. In any case, appellants do not point out how they could have been prejudiced by the failure to give such an additional charge in view of the evidence before the jury. Cf. e. g., United States v. Armone, supra

at 404; United States v. Agueci, 310 F.2d 817, 827–828 (2 Cir. 1962), cert. denied sub nom. Guippone v. United States, 372 U.S. 959, 83 S.Ct. 1013, 10 L. Ed.2d 11 (1963).

■ The trial judge charged that a reasonable doubt is "a doubt based on reason," "a substantial doubt and not a speculative doubt"; he concluded that "you must be satisfied of the defendant's guilt to a moral certainty before you can convict." This charge was not error. United States v. Heap, supra; United States v. Davis, supra.

The convictions of appellants Aiken and Davis are accordingly affirmed.

## II.

Appellant Cole contends that after dismissing the conspiracy count as to him Judge Cannella should of his own motion have severed the two substantive counts against him. The government first urges that this contention is foreclosed on appeal by Cole's failure to move for a severance under Fed.R.Crim.P. 14 after the dismissal of the conspiracy count. See generally, e. g., Monroe v. United States, 98 U.S.App.D.C. 228, 234 F.2d 49, 57, cert. denied, 352 U.S. 872, 873, 77 S.Ct. 94, 1 L.Ed.2d 76 (1956); United States v. Perl, 210 F.2d 457 (2 Cir. 1954); Orfield, Relief From Prejudicial Joinder in Federal Criminal Cases (Part II.), 36 Notre Dame Law, 495, 499 (1961). We need not pass on this point, for the denial of a motion for a severance, had one been made, would not have been an abuse of discretion.

■ Where joinder was originally proper under Fed.R.Crim.P. 8(b), as it was here, a motion for severance after the count justifying joinder (here the conspiracy count) is dismissed will not be granted unless the defendant was prejudiced by the joinder or the count dismissed was not alleged by the government in good faith, that is, with reasonable expectation that sufficient proof would be forthcoming at trial. E. g., United States v. Schaffer, 266 F.2d 435, 440–441 (2 Cir. 1959), aff'd, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960).

There has been no suggestion that the conspiracy count against Cole was pressed in bad faith.

■ Nor was Cole prejudiced by joinder. The testimony of Henderson and the agents, and Cole's defense, as to the two sales for which he was convicted presented sharp factual issues easily separated from the issues involving the other defendants. Moreover, Judge Cannella twice directed the jury to divorce the counts against Cole from the other issues, and he made the excellent suggestion that it consider those counts first. These limiting instructions adequately protected Cole from prejudice.[2] Cf., e. g., United States v. Elgisser, 334 F.2d 103 (2 Cir.), cert. denied sub nom. Gladstein v. United States, 379 U.S. 879, 881, 85 S.Ct. 148, 13 L.Ed.2d 86 (1964); United States v. Kaufman, 311 F.2d 695 (2 Cir. 1963). Cole argues that the greater likelihood of prejudice when the count justifying joinder is dismissed only as to one defendant requires severance, but we are not persuaded that our holding to the contrary in United States v. Manfredi, 275 F.2d 588 (2 Cir.), cert. denied, 363 U.S. 828, 80 S.Ct. 1598, 4 L.Ed.2d 1523 (1960), should not be followed here.

■ Cole also argues that the trial court abused its discretion by refusing to reopen the case just before summations were to begin for the testimony of a witness who, he said, had just been located and would testify that Henderson had threatened to frame Cole and had suggested that the witness place narcotics in Cole's automobile. Although Cole's counsel stated that the witness could not be located "on the eve of the defense," he did not adequately account for his failure to locate her during the five weeks which elapsed between Henderson's direct testimony relating to Cole and the closing of the proofs. The denial of the motion to reopen was thus not an abuse of discretion. Cf., e. g., United States v. Edwards, 366 F.2d 853, 873 (2 Cir. 1966), cert. denied sub nom. Parness v. United States, 386 U.S. 919, 87 S.Ct. 882, 17 L.Ed.2d 790 (1967). United States v. Houlihan, 332 F.2d 8, 15 (2 Cir.), cert. denied, 379 U.S. 828, 85 S.Ct. 56, 13 L.Ed.2d 37 (1964).

For these reasons, we affirm Cole's conviction.

### III.

■ Appellant Rogers' contention that there is insufficient evidence to sustain his conviction on the conspiracy count is based upon several cases in which this Court has held that "participation in a single isolated transaction [is] an insufficient basis upon which to bottom an inference of continuing participation in a conspiracy." United States v. Stromberg, 268 F.2d 256, 267 (2 Cir.), cert. denied sub nom. Lessa v. United States, 361 U.S. 863, 868, 80 S.Ct. 119, 4 L.Ed.2d 102 (1959); United States v. Reina, 242 F.2d 302, 306 (2 Cir.), cert. denied, 354 U.S. 913, 77 S.Ct. 1294, 1 L.Ed.2d 1427 (1957); United States v. Koch, 113 F.2d 982 (2 Cir. 1940). The proof against Rogers, however, showed more than "a single isolated transaction"; it showed that Rogers was carrying on a steady traffic of considerable volume in narcotics during the summer of 1964, that he twice purchased sizeable quantities of narcotics from Davis, and that his employee Shands even diluted narcotics for Davis on one occasion. The jury could infer from these facts that Rogers was dependent upon the conspiracy for a sizeable and steady supply of narcotics, and that this dependence made him a member with an interest in advancing the con-

---

2. Cole's reliance upon United States v. Bentvena, 319 F.2d 916, 955–956 (2 Cir.), cert. denied, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963), in which three appellants' convictions on substantive counts were reversed after the evidence had been held insufficient on appeal to sustain their conviction on the conspiracy count, is misplaced. The majority observed that there was "far greater likelihood of prejudice" where the conspiracy count as to those defendants had been submitted to the jury, and explicitly distinguished United States v. Schaffer, supra, on this ground.

spiracy. Cf. United States v. Bentvena, supra note 2, 319 F.2d at 928; United States v. Aviles, 274 F.2d 179, 190 (2 Cir.), cert. denied sub nom. Evola v. United States, 362 U.S. 974, 982, 80 S.Ct. 1057, 4 L.Ed.2d 1009 (1960). By contrast, in United States v. Koch, supra at 983, this Court found no evidence that seller and buyer had any "agreement to advance any joint interest." The fact that this inference rests upon circumstantial evidence and that other inferences may be possible does not, of course, condemn it. United States v. Valenti, 134 F.2d 362 (2 Cir.), cert. denied, 319 U.S. 761, 63 S.Ct. 1317, 87 L.Ed. 1712 (1943). Nor is the fact that it was not shown that Rogers dealt with Aiken determinative, as the jury could have found that he must have known that the conspiracy involved others than Davis. It is clear that one conspirator need not know all the others who are shown to be members of the conspiracy. Cf., e. g., United States v. Agueci, supra at 826–827.

The convictions are affirmed.