**UNITED STATES of America,**
**Appellee,**

v.

**Clarence JONES, Appellant.**

**No. 71–1156.**

United States Court of Appeals,
Eighth Circuit.

Dec. 16, 1971.

Ellis S. Outlaw, St. Louis, Mo., for appellant.

Daniel Bartlett, Jr., U. S. Atty., and Robert B. Schneider, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before VOGEL, GIBSON and LAY, Circuit Judges.

VOGEL, Circuit Judge.

Clarence Jones, defendant-appellant, after pleading not guilty, was tried and convicted by a jury on a one-count information charging unlawful possession of stolen mail matter knowing the same to have been stolen, in violation of 18 U.S. C.A. § 1708. He appeals from the judgment of conviction. We affirm.

The stolen mail matter consisted of a welfare check dated December 10, 1970, in the sum of $64.00 payable to Bettye A. Simmons, 5782 Kingsbury Place, Apartment 3E, St. Louis, Missouri. The check had been mailed by the Bureau of Finance, Division of Welfare, State of Missouri, from Jefferson City, Missouri to Bettye A. Simmons, St. Louis, Missouri, at approximately 3:00 P.M. December 9, 1970. On December 10, 1970, at approximately 6:30 P.M. two officers of the St. Louis City Police Department, while on regular patrol, observed a car being driven by the defendant make an illegal right-hand turn without stopping for a red traffic light. Following the car around the corner, the officers also noticed that the car, a 1963 blue Chevrolet, had no state license plate. The officers thereupon stopped defendant's car, parking their patrol car directly behind it and alongside the curb. Upon alighting from their patrol car, and from a distance of some four to six feet, the officers observed Jones tearing a blue piece of paper into a number of pieces and attempting to push them to his right between the seat and the back cushion. The street was well lighted, and the officers had left the lights of their patrol on high beam. The officers asked the defendant to produce a driver's license, which he did, the license being in the name of Melvin Barber. The officers noted that the defendant's physical appearance did not correspond

to the description given on the driver's license and that he was unable to answer correctly questions with reference to the license. They thereupon placed him under arrest for making an illegal right turn and for operating a vehicle without a state license plate.

After placing defendant in the police patrol car, the officers returned to the Chevrolet in which they had observed defendant tearing and attempting to conceal the blue pieces of paper. Three of these pieces of paper were on the front seat in plain view of the officers. The officers picked these up, then searched the seat, finding a total of eleven pieces of blue paper, which the officers reassembled on the scene. Assembled they turned out to be the welfare check heretofore described.

Prior to trial defendant made an unsuccessful motion to suppress the welfare check.

On appeal here, Jones attempts to justify reversal of the judgment of conviction on the following points:

1. That at the time of the arrest the police officers did not have probable cause to arrest Jones for traffic violations.

2. That the seizure of the stolen check violated defendant's Fourth Amendment rights to protection from unlawful searches and seizures.

3. That the defendant, a black man, had the right to be tried before a jury comprised of black persons.

4. That there was insufficient evidence to prove that the defendant possessed the stolen welfare check.

■ An additional but unargued ground appears in defendant's brief as a violation of the double jeopardy prohibition of the Constitution. The latter contention and points 1, 3, and 4 may be summarily disposed of. As to point 1, the record indicates that the officers had probable cause to arrest defendant when they observed him making an illegal right-hand turn and operating a vehicle without a state license plate. The

former is a violation of an ordinance of the City of St. Louis (Ord. 54424, Dec. 2, 1966), and the latter is a violation of a law of the State of Missouri (§ 301.130(5) V.A.M.S. 1959). Unquestionably, defendant's arrest on these grounds was constitutionally valid. In addition thereto, defendant attempted to pawn off as his own a driver's license issued in the name of Melvin Barber. Defendant's point 1 is without merit.

■ Defendant's point 3 that he was entitled to be tried before a jury completely comprised of blacks is also without merit. Defendant was not entitled to a black jury solely because of his race. While due process forbids systematic exclusion of any minority group from the grand or petit jury, one is not entitled as a matter of law to have a jury comprised entirely of one's own racial, religious or ethnic group. See Eubanks v. Louisiana, 1957, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991; Hernandez v. Texas, 1954, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866; Cassell v. Texas, 1949, 339 U.S. 282, 70 S.Ct. 629, 94 L. Ed. 839 (holding that systematic exclusion violates due process); and Swain v. Alabama, 1964, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759; Akins v. Texas, 1945, 325 U.S. 398, 65 S.Ct. 1276, 89 L. Ed. 1692; Bush v. Kentucky, 1882, 107 U.S. 110, 1 S.Ct. 625, 27 L.Ed. 354 (holding that due process does not require a jury comprised entirely of defendant's group).

We have held that the burden of proof in such cases is clearly on the one alleging discrimination. In Bailey v. Henslee, 8 Cir., 1961, 287 F.2d 936, cert. denied, 1961, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78, Judge Blackmun, writing for this court, noted:

"Discrimination in a jury's selection must of course be proved; it is not to be presumed. * * * The burden of establishing the discrimination is upon the defendant. * * * He may, however, establish a prima facie case of discrimination of this kind and, if he does, the burden then pass-

es to the state to refute the discrimination." 287 F.2d at 942.

Accord, Moore v. New York, 1948, 333 U.S. 565, 68 S.Ct. 705, 92 L.Ed. 881; United States v. Williams, 8 Cir., 1970, 421 F.2d 529. The defendant here has neither met nor attempted to meet such burden. Additionally, the record here discloses that the panel from which defendant's jury was chosen included six black persons. One of the black persons whose name was drawn was stricken by the exercise of a peremptory challenge by defendant's own counsel. Again, defendant's contention is without merit.

■ Defendant's fourth point that there was insufficient evidence to establish his possession of the stolen welfare check is equally devoid of substance. The officers both testified that they saw the defendant tearing the blue paper into a number of small pieces and then observed him surreptitiously attempting to conceal those pieces in the back of the front seat. After placing defendant under arrest, the officers picked up the three pieces of paper in full view, searched into the seat cushion, finding the remaining eight and on the spot pieced them together, thereupon ascertaining that the torn pieces made up the stolen welfare check in question.

■ Equally frivolous is the contention that the double jeopardy provision of the Fifth Amendment was violated. The traffic violations were offenses separate and apart and entirely different from the violation of 18 U.S.C.A. § 1708 involving the possession of stolen mail matter.

The only contention of the defendant which requires serious consideration is the second involving alleged violation of the Fourth Amendment protection against unlawful searches and seizures.

The constitutional prohibition is, of course, " * * * against unreasonable searches and seizures * * *." We have already demonstrated that the arrest of Jones at the time and place in question was thoroughly justified. To recapitulate, defendant was first observed by the police officers committing a minor traffic violation. As they approached, apparently to stop him and give him a traffic citation, they observed that he was driving a car without a license plate, a violation of state law which was not quite so minor. When the defendant had been stopped and was asked to show his driver's license, he produced a license obviously belonging to someone else.

At the outset we must take note of the fact that the Supreme Court has sanctioned warrantless searches of automobiles, due to their mobility, in circumstances not justifying the warrantless search of a private residence, office or other stationary property. In Cooper v. California, 1967, 386 U.S. 58, at page 59, 87 S.Ct. 788, at page 790, 17 L.Ed.2d 730, rehearing and modification denied, 386 U.S. 988, 87 S.Ct. 1283, 18 L.Ed.2d 243, the court noted:

"We made it clear in *Preston* that whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case and pointed out, in particular, that searches of cars that are constantly movable may make the search of a car without a warrant a reasonable one although the result might be the opposite in a search of a home, a store, or other fixed piece of property."

Again in Dyke v. Taylor Implement Mfg. Co., 1968, 391 U.S. 216, at page 221, 88 S.Ct. 1472, at page 1475, 20 L.Ed.2d 538, the Supreme Court, through Mr. Justice White, said:

"Automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office. Brinegar v. United States, 338 U.S. 160, [69 S.Ct. 1302, 93 L.Ed. 1879] (1949); Carroll v. United States, 267 U.S. 132, [45 S.Ct. 280, 69 L.Ed. 543] (1925). The cases so holding have, however, always insisted that the officers conducting the search have 'reasonable or probable cause' to believe

that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search."

See, also, Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; Agnello v. United States, 1925, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145; Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; White v. United States, 8 Cir., 1971, 448 F.2d 250 per.

■ Despite the different standards applied, a warrantless search of a motor vehicle must still meet the requirements of probable cause and reasonableness. The search must not be remote in time or place when the securing of a warrant would be practicable. Coolidge v. New Hampshire, 1971, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564; Preston v. United States, 1964, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777. Nor will the search be sustained if the arrest for a traffic violation is a mere pretext for an exploratory search. Amador-Gonzalez v. United States, 5 Cir., 1968, 391 F.2d 308; United States v. Owens, 7 Cir., 1965, 346 F.2d 329. The circumstances justifying the search in each case must rise to probable cause and reasonableness.

These standards must of necessity be applied in a flexible manner. In Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, Mr. Justice Rutledge noted:

"These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." 338 U.S. at 176, 69 S.Ct. at 1311.

In the instant situation, we must judge the reasonableness of the search from all of the attendant circumstances. We note first that three of the pieces of the stolen welfare check later introduced into evidence had fallen into the "plain view" of the arresting officers. In Harris v. United States, 1968, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067, 1069, the court noted:

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." (Emphasis supplied.)

See, United States v. Patterson, 10 Cir., 1971, 447 F.2d 424; United States v. Harflinger, 8 Cir., 1970, 436 F.2d 928, cert. denied, 1971, 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137; Coates v. United States, D.C.Cir., 1969, 413 F.2d 371; Nunez v. United States, 5 Cir., 1967, 370 F.2d 538; Fagundes v. United States, 1 Cir., 1965, 340 F.2d 673. Second, defendant, by his surreptitious tearing up of the stolen check as the officers approached and by his furtive movements in attempting to conceal the pieces, reasonably alerted the police officers to the fact that he may have been involved in some other illegal activity and was trying to conceal evidence of that activity from the police as they sought to arrest him for the traffic violations.[1] We believe that the circum-

---

1. Cf., Abel v. United States, 1960, 362 U.S. 217, at page 238, 80 S.Ct. 683, at pages 696–697, 4 L.Ed.2d 668, where the Supreme Court said:

"The other item seized in the course of the search of petitioner's hotel room was item (1), a piece of graph paper containing a coded message. This was

stances afforded the police officers the requisite probable cause to initiate a limited search of defendant's automobile. "[A] practical, nontechnical * * *" application of the rules relating to searches and seizures dictates that we uphold the search here. Brinegar v. United States, supra, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879. See, United States v. Jackson, 7 Cir., 1970, 429 F.2d 1368; United States v. Humphrey, 10 Cir., 1969, 409 F.2d 1055; People v. Blodgett, 1956, 46 Cal.2d 114, 293 P.2d 57; 10 A.L.R.3d 314, 345–349 (1966).

Third, defendant had been arrested for two traffic violations and in addition thereto he had produced an operator's license clearly not his own. We feel that under these circumstances the police were reasonably justified in conducting a limited search for weapons and concealable evidence within the reach of the arrestee—a follow-up from the seizure of the three pieces of stolen welfare check which had fallen into plain view.

Fourth, as we have just noted, the search here was a limited one, there being no evidence that a general exploratory search of the automobile was undertaken. The police merely searched the area within the arrestee's immediate control, a limited search that would in all probability be upheld under the stricter rules of warrantless searches and seizures for private residences enunciated by the Supreme Court in Chimel v. California, 1969, 395 U.S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685.

Every traffic arrest will not justify a warrantless search. Nevertheless, where, as here, the officers have ample grounds—in other words, reasonable or probable cause to believe that they will "find the instrumentality of a crime or evidence pertaining to a crime" before they begin their search—such a search does not violate the Fourth Amendment prohibition against unreasonable searches or seizures.

Affirmed.

seized by Schoenenberger as petitioner, while packing his suitcase, was seeking to hide it in his sleeve. *An arresting officer is free to take hold of articles which he sees the accused deliberately trying to hide.* This power derives from the dangers that a weapon will be concealed, or that relevant evidence will be destroyed. Once this piece of graph paper came into Schoenenberger's hands, it was not necessary for him to return it, as it was an instrumentality for the commission of espionage. *This is so even though Schoenenberger was*

*not only not looking for items connected with espionage but could not properly have been searching for the purpose of finding such items.* When an article subject to lawful seizure properly comes into an officer's possession in the course of a lawful search it would be entirely without reason to say that he must return it because it was not one of the things it was his business to look for. See *Harris, supra,* 331 U.S. [145], at 154–155 [67 S.Ct. 1098, 91 L.Ed. 1399.]" (Emphasis supplied.)