UNITED STATES of America, Appellee,

v.

Henry Eugene WEBB, Appellant.

No. 75–1791.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 9, 1976.

Decided April 12, 1976.

Rehearing and Rehearing En Banc Denied May 4, 1976.

---

Leo Garvin, Jr., on brief, Fordyce & Mayne, Clayton, Mo., for appellant.

Thomas E. Loraine, Asst. U. S. Atty., and Donald J. Stohr, U. S. Atty., St. Louis, Mo., on brief, for appellee.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and VAN PELT, Senior District Judge.*

* The Honorable Robert Van Pelt, United States Senior District Judge for the District of Nebraska, sitting by designation.

GIBSON, Chief Judge.

Defendant, Henry Eugene Webb, was convicted in a jury trial of possessing an unregistered firearm (a .20 gauge short barrelled shotgun) in violation of 26 U.S.C. §§ 5861(d) and 5871 (1970), and sentenced to three years in prison. On appeal defendant asserts as error: (1) the District Court's [1] refusal to suppress evidence seized following a police stop of the auto in which defendant was a passenger, (2) the court's refusal to suppress two inculpatory statements made by the defendant while in custody, and (3) the combined effect of three trial events which, he alleges, deprived him of due process. The latter complaint refers to the court's denial of a continuance for additional trial preparation, allowing the Government to reopen its case in chief, and authorization for the Government to present a rebuttal witness. We affirm.

The evidence was seized on the evening of April 7, 1975, near the intersection of Blair Avenue and Branch Street in St. Louis, Missouri. Earlier in the evening while defendant had been drinking beer in the Colonial Bar, located in the vicinity, a shotgun—the weapon serving as the basis for defendant's conviction—was discharged into the tavern's jukebox. Soon thereafter, the barmaid, Evelyn Rector, closed the bar and departed in her 1970 gold Buick along with the defendant and an acquaintance named Ronnie Young. They soon stopped near another tavern located on the northwest corner of Blair Avenue and Branch Street, facing west on Branch. There they were joined by a fourth passenger named Butch Jackson.

At approximately 9:55 p. m. four St. Louis plainclothes police officers driving east through the intersection in an unmarked police car observed the 1970 gold Buick double parked facing west at 1502 Branch Street. The car was parked only six feet from the intersection in front of a tavern and was blocking both lanes of traf-

1. The Honorable John K. Regan, United States District Judge for the Eastern District of Missouri.

fic on Branch Street. The officers drove past the intersection and made a U-turn to return for the purpose of stopping or detaining the Buick to warn the driver not to double park or block the street. They did not intend to issue a traffic summons, only to give a warning. They described the intersection as a particularly dangerous one with only a stop sign for traffic heading west on Branch Street.

However, as the police car pulled up from behind, the Buick slowly pulled away and gained speed. The police followed and flashed their lights. Finally, after moving three blocks, they forced the car to stop by activating the police siren. Officer Molden, who had been seated in the left rear seat of the police car, approached the Buick on foot from the left and spotted one female and three male occupants in the car. The doors were closed. The defendant was seated in the right front seat. Officer Molden shined his flashlight into the car and announced to his fellow officers that he observed a gun barrel and the front section of a gunstock protruding from underneath the right front seat and resting on the hump of the floor. Officer Klier, who had been seated in the right rear seat of the police car, simultaneously approached on the right side. Shining his flashlight into the Buick, he observed through the passenger window several shotgun shells lying on the floor.

The occupants were ordered to step out of the car. They were placed under arrest for carrying a concealed weapon and *Miranda* warnings were read to them. Webb was frisked and one spent and five live shells were found in his pockets. A total of twenty-four live .20 gauge shotgun shells were seized from the car. The subjects were not interrogated on the street. Within fifteen minutes they were taken to the police station for booking.

During the first twenty minutes at the police station, the defendant voiced two inculpatory statements. The first was in response to a statement by a police detective that the barrel of the shotgun was about 11

inches long. Webb stated, "It's mine and it's legal." He made his second comment ten or fifteen minutes later, again claiming ownership of the weapon, apparently to keep his companions out of trouble, by saying, "It's mine, let them go." The state charge of carrying a concealed weapon was later dismissed and defendant was indicted for the federal offense of possessing an unregistered short barrelled firearm. At trial, a special agent of the Bureau of Alcohol, Tobacco and Firearms reported the defendant's in-custody declarations to the jury.

I. *The seized evidence.*

 The defendant challenges the District Court's refusal to suppress the shotgun and shells seized from the car. He contends that the police lacked probable cause for an arrest and that the investigatory stop was only a pretext for an unlawful exploratory search. His argument, however, is refuted by the record. In ruling upon the suppression motion, the District Court had before it substantial evidence to support a finding that the police lawfully stopped the car for the purpose of warning the driver of traffic violations committed in their presence, *United States v. Geelan,* 509 F.2d 737, 743–44 (8th Cir. 1974), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975); *United States v. Jones,* 452 F.2d 884 (8th Cir. 1971), and that, in so doing, they observed the firearm in plain view and lawfully seized it as evidence. *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *United States v. Johnson,* 506 F.2d 674 (8th Cir. 1974), *cert. denied,* 421 U.S. 917, 95 S.Ct. 1579, 43 L.Ed.2d 784 (1975); *United States v. Jones, supra* at 888.

The arresting officers testified that when they returned to the intersection they intended to warn the driver to refrain from double parking and blocking the street. Defendant does not contend that such actions are not traffic violations.[2] Hence, under the circumstances the officers had authority to stop the driver and to approach

2. Ordinances of the City of St. Louis prohibit double parking and blocking an intersection.

St. Louis, Mo., Rev.Code §§ 836.010, 881.010 (1960), *as amended.*

the auto on foot. *United States v. Jones, supra* at 886. At the moment the officers lawfully stopped the Buick, they need not have had probable cause for a custodial arrest and search of the car. All that is required is that at the time the officers observed the weapon in the car, they must have had a right to be in close proximity to the car at a point from which the observation occurred. Under the plain view doctrine, a mere observation by an officer from a position that he is entitled to be in is not a search within the meaning of the Fourth Amendment. *United States v. Wilson,* 524 F.2d 595, 598 (8th Cir. 1975). As the Supreme Court has stated:

> It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.

*Harris v. United States, supra* 390 U.S. at 236, 88 S.Ct. at 993, 19 L.Ed.2d at 1069. Here, the officers lawfully stopped the driver to warn him of a traffic violation and in so doing spotted a short barrelled shotgun in plain view, thereby acquiring probable cause to arrest the suspects and search the car more thoroughly. *United States v. Johnson, supra; United States v. Jones, supra* at 888.[3] Thus the complete search of the auto and seizure of the weapon and shells were lawful and the evidence was properly admitted at trial. *Brewer v. Wolff,* 529 F.2d 787 (8th Cir. 1976).

## II. *The defendant's in-custody statements.*

■ Defendant contends that the court erred in refusing to suppress his two in-custody declarations. He maintains that they were tainted by his illegal arrest, that the taint was not removed by simply reading *Miranda* warnings to him upon his arrest, and that suppression is required under *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). In *Brown,* the Court suppressed two in-custody inculpatory statements made by the defendant after he was arrested unlawfully and interrogated despite the reading of *Miranda* warnings to him. In the instant case, however, Webb's arrest was not unlawful and his statements were made spontaneously without interrogation or questioning of any kind. *Brown,* therefore, is not applicable.

## III. *Other alleged trial errors.*

The defendant contends that the cumulative effect of three alleged trial errors denied him due process: (1) the court's denial of a requested continuance for more preparation, (2) allowing the Government to reopen its case in chief, and (3) the authorization for the Government to present a rebuttal witness. Defendant concedes that "[p]erhaps no one of the alleged errors considered *by itself* can be regarded as sufficiently prejudicial to warrant reversal." (Emphasis defendant's.) We have carefully considered the defendant's various claims individually and in combination. In our view none constitutes trial error and their cumulative effect did not deny him a fair trial.

■ The court did not err in denying a continuance. Defendant was arrested on April 7, 1975. State charges against him were later dismissed and he was indicted by the federal grand jury on September 19, 1975. Counsel was appointed for him on the afternoon of Monday, September 22; he was arraigned the same day and trial was set for the following Monday, September 29. On the trial date, the defendant filed a written motion for a continuance asking additional time to prepare for trial. He argued that he had only six days to prepare, compared with the Government's five months, and still had not reviewed the preliminary hearing testimony of a police offi-

---

**3.** In *United States v. Johnson, supra,* a police officer stopped a vehicle for running a stop sign. As the officer approached the vehicle and shined his flashlight inside, he spotted a sawed-off shotgun. Similarly, in *United States v. Jones, supra,* the defendant was arrested for making an illegal turn and for driving without a license plate. As the officers approached his car, they observed him tearing a piece of paper (a stolen check) into pieces and attempting to push the pieces into the seat. In both cases, the seized evidence was properly admitted at trial.

cer nor located Ronnie Young—the man whom the defendant accused of firing the weapon in the Colonial Bar and placing the weapon in the car. Defendant concedes, however, that the Government fully disclosed the file of its case and complied with discovery requests. The Government produced Mr. Young to be interviewed by defendant's counsel and made available Jencks material relating to its non-police witnesses.

The grant or denial of a continuance is a matter within the discretion of the trial court, and absent a clear abuse of that discretion the trial court's ruling will not be disturbed. *United States v. Schrenzel,* 462 F.2d 765, 772 (8th Cir.), *cert. denied,* 409 U.S. 984, 93 S.Ct. 325, 34 L.Ed.2d 248 (1972); *United States v. Leach,* 429 F.2d 956, 963 (8th Cir. 1970), *cert. denied,* 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971). To be sure, six days is little time to prepare for a trial. However, not much time was needed in this rather uncomplicated case. The Government was cooperative in exposing its file and in producing the desired witness. The district courts are under a mandate to move their dockets so as to give practical reality to the constitutional mandate for speedy trial. Under the circumstances, no abuse of discretion is shown.

■ The court did not err in permitting the Government to reopen its case. At the close of the prosecution's case in chief, the defendant moved for acquittal, citing *inter alia* the Government's failure to prove that the weapon was serviceable.[4] The court then permitted the Government to reopen its case to present the brief testimony of an agent who had test-fired the weapon. Defendant argues that to do so was error under *United States v. Bayer,* 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1946). However, his reliance upon *Bayer* is misplaced. *Bayer* involved a defendant's attempt to reopen a criminal case four hours after it was submitted to the jury to place in evidence an unverified telephone memorandum. The Supreme Court held that the trial judge did not reversibly err in refusing to do so. 331 U.S. at 539, 67 S.Ct. at 1397, 91 L.Ed. at 1659.

■ Questions relating to the order of proof and permission for a party to reopen its case after resting are entrusted to the trial court's wide discretion. *Rhyne v. United States,* 407 F.2d 657, 661 (7th Cir. 1969); *Lucas v. United States,* 343 F.2d 1, 3 (8th Cir.), *cert. denied,* 382 U.S. 862, 86 S.Ct. 125, 15 L.Ed.2d 100 (1965). Relevant factors for decision are whether the evidence caused surprise to the defendant, whether he was given adequate opportunity to meet the proof, and whether the evidence was more detrimental to him because of the order in which it was introduced. *See Lucas v. United States, supra* at 3. Here, the defendant knew that the Government had tested the weapon to prepare evidence that it functioned; he had ample opportunity to meet the proof as presented; and the order in which it was introduced was of no consequence. Under the circumstances, no abuse of discretion is shown. *United States v. Williams,* 336 F.2d 183 (2d Cir.), *cert. denied sub nom. Watson v. United States,* 379 U.S. 827, 85 S.Ct. 54, 13 L.Ed.2d 36 (1964); *Powell v. United States,* 113 U.S.App.D.C. 255, 307 F.2d 396 (1962), *cert. denied,* 377 U.S. 972, 84 S.Ct. 1655, 12 L.Ed.2d 741 (1964).

■ Finally, the defendant challenges the trial court's permission for the Government to call Evelyn Rector as a rebuttal witness. This claim is without merit. The foundation for her testimony was the defendant's own cross-examination that took place after the close of the Government's case. She was called to impeach his testimony.[5] If, as here, a defendant takes the

---

4. Certain firearms found by the Secretary of the Treasury to be unserviceable are by definition excluded from the statutory registration requirements. See 26 U.S.C. §§ 5845(a) and (h), 5852(e) (1970).

5. The defendant denied ever touching the weapon other than to remove it from the bar in the tavern and denied making any statement in her presence concerning his intended conduct on the evening of his arrest. She testified to the defendant's prior inconsistent behavior and statements made in her presence.

stand to testify in his own behalf, his credibility is placed in issue and the Government is entitled to attack it by cross-examination and relevant impeaching evidence. *United States v. Bebee,* 532 F.2d 110 (8th Cir. 1976). Under the circumstances, the court properly exercised its discretion in granting the Government permission to present her testimony in rebuttal. *Grell v. United States,* 112 F.2d 861, 876 (8th Cir. 1940).

The judgment of the District Court is affirmed.