**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kenneth James CALLAHAN and Donald
Larson, Defendants-Appellants.**

Cr. 4–77–84.

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 1, 1978.

Andrew W. Danielson, U. S. Atty., Thorwald H. Anderson, Jr., Asst. U. S. Atty., Minneapolis, Minn., attys., for plaintiff-appellee.

Ronald I. Meshbesher, Meshbesher, Singer & Spence, Ltd., Minneapolis, Minn., atty., for defendant Callahan.

Bruce Hartigan, Minneapolis, Minn., atty., for defendant Larson.

## SUPPLEMENTARY RECORD IN RESPONSE TO ORDER OF LIMITED REMAND

DEVITT, Chief Judge.

By order filed July 7, 1978 the Court of Appeals remanded these cases to the United States District Court for the District of Minnesota for the limited purposes set forth therein. The Court of Appeals directed that the District Court permit the record to be supplemented as to two issues (I), the claimed error of the trial court in denying defendant's motion to reopen the case to consider reception of the testimony of Lynda Burt Billstrom, and (II), a claimed unauthorized communication between a marshal and the jury.

Responsive to that direction, the District Court conducted a hearing on July 21, 1978 at which testimony of Lynda Lee Burt Billstrom and others was taken and at which the parties stipulated to the admission of a television interview of the jury foreman and a juror (read into the record at pp. 30–31). Under date of July 26, 1978, the government submitted its response to the contentions of defendants in the form of a sworn statement as was authorized by the Court of Appeals. The district court has made supplementary findings as to each of the two issues.

The record on remand, consisting of a 169 page transcript, original and two copies of the sworn statement constituting the government's response and original and two copies of the district court's supplemental findings, are delivered to the Clerk of the United States District Court for submission to the Clerk of the United States Court of Appeals.

## SUPPLEMENTARY FINDINGS ON REMAND

DEVITT, Chief Judge.

Under date of January 9, 1978, the District Court filed its Memorandum and Order Denying Motions for Judgment of Acquittal or New Trial, *United States v. Callahan*, 442 F.Supp. 1213. Therein the court considered, discussed and ruled upon each of the fourteen principal claimed grounds for relief. The two grounds reconsidered on remand, the motion to reopen and the claimed unauthorized communication with the jury, are discussed at headnotes 20, 21 (pages 1223, 1224, 1225) and headnote 25 (page 1226) of the published memorandum, *supra*.

The facts and arguments brought out in the supplemental record and briefs, along with a reconsideration of the original record and briefs, again satisfies the court the motions should be denied.

### I. *The Motion to Reopen*

■ The situation in chambers at 9:15 A.M. on Monday morning, October 21, 1977 when defendants moved to reopen, as reflected both in the record and the record on remand, was that defendants had rested three days before, on Friday, October 28 in the afternoon. At the time defendants

rested, both of defendants' counsel knew a subpoena was in the hands of the United States Marshal for service upon Lynda Burt Billstrom. Notwithstanding this, defendants did not reserve the right to reopen if service was made. This was likely a tactical decision on their part—and maybe a good one in view of the impressive rebuttal evidence in the hands of the government, particularly the strong showing that could be made that "Runt" Alger (alleged Billstrom gang member) was roofing a church the day of the Piper kidnapping.

When defendants rested, government counsel made his responsive tactical decision—to immediately rest. He did so—abandoning a prepared plan of rebuttal—and released all of his witnesses.

These decisions, reflecting the considered professional judgment of the very competent counsel on each side, were made on Friday, October 28. The rest of the day was spent in settling instructions.

Three days later, Monday, October 31, just before jury arguments were to begin, defendants' counsel came to chambers and moved to reopen. The court heard discussion and arguments and denied the motion. The record made then reflects the situation shown to the court at that time and it was upon that record and the court's trial knowledge that the court made the judgment to deny the motion. It is contained in the trial record Vol. 14, starting at page 14. As part of its trial knowledge, the court knew that the government long before had furnished defendants' counsel with copies of statements made by Lynda Burt Billstrom to the F.B.I. concerning Billstrom gang activities. The record is not specific as to the exact date the U.S. Attorney gave defendants' counsel these statements, but it was at the time arguments were first heard on motions and several months before trial. It is significant that, at the same time, the prosecutor also gave defendants' counsel the F.B.I. reports reflecting the results of F.B.I. investigation of all possible leads occasioned by Lynda Burt Billstrom's statement. These F.B.I. reports, in substance, refuted any reasonable basis for attributing

credibility to a claimed inference in Mrs. Billstrom's statement that the so-called "Billstrom gang" had done the Piper job. Billstrom was dead, killed in a shoot-out in 1974. "Runt" Alger, a member of the Billstrom gang, could not have been involved, as was sought to be inferred from Mrs. Billstrom's statement, because the F.B.I. Reports reflected a tight alibi for him installing a church roof in Minneapolis at the time of the kidnapping. The reports reflected that Mrs. Billstrom's son, Michael, would refute her statement with reference to his presence in a Hastings, Minnesota motel in July 1972 as part of a possible cover-up.

The value of Mrs. Billstrom's possible testimony would have been substantially discredited, and probably outweighed, by the potential rebuttal evidence available to the government. It is not reasonable to believe therefore that she could be viewed as a likely helpful witness for defendants. But if she were so viewed, defendants' counsel should have subpoenaed her long before the last afternoon of trial. She had not even been interviewed, and, contrary to defendants' assertion in briefs, she was readily available. She testified at the hearing (p. 127) that she was released from prison in March 1975 and stayed in Minnesota. In October 1977, during trial, she was at her home in Winona, Minnesota. She was on state parole at the time and her whereabouts was known to her parole officer as well as to Winona County sheriffs' officers. Her residence was served by a telephone. Although defendants' counsel would imply through the testimony of their office investigator that Mrs. Billstrom was avoiding service of process, there is no evidence to support this. She appeared to be anything but an unwilling witness at the remand hearing. The U.S. Marshal had no trouble finding and serving her in Winona within three hours of the time the subpoena was given him the last day of trial.

Counsel for defendants, if they valued Mrs. Billstrom's possible testimony, should have interviewed her early on during the approximately four months they had her

F.B.I. statements; and, if they found her potential testimony helpful to their case, they should have subpoenaed her to testify at least one or two days before resting. They make no reasonable excuse for not doing so. In their briefs they urge that such a large number of reports were given to them they didn't have time to read them all. But at defendant's request, the court continued trial of the case for several weeks to give counsel adequate time to prepare. There were no requests for further continuances. Counsel imply that the U.S. Marshal was uncooperative about handling service of process upon Mrs. Billstrom. But the record made on October 31 and at the remand hearing refutes such an inference. It is clear from that record, and not denied, that the subpoena was first given to the U.S. Marshal for service on Mrs. Billstrom around noon on October 28, the last day of trial. It was served at Winona, Minnesota, some 120 miles away, within approximately three hours. In summary, it appears to the court that Mrs. Billstrom's potential testimony, if relevant and admissible, would have been of little, if any, worth to defendants' case. She admitted at the remand hearing that she had lied to the F.B.I. But, at all events, the inferences from her testimony could have been substantially refuted by evidence available to the government in rebuttal. Counsel for defendants undoubtedly were aware of these weaknesses in Mrs. Billstrom's potential testimony, which indicates strongly that their failure to procure her testimony in a more prompt fashion was a reasoned trial tactic.

It would have been for the jury to weigh and decide the worth of her testimony in the light of the government's rebuttal to it, but the relevancy of her testimony, its admissibility and the weight to be accorded it were not reached during trial because defendants did not tender it until three days after both sides had rested and just before jury arguments were to begin. Whether defense counsel's actions in not promptly interviewing and timely subpoenaing Mrs. Billstrom were the result of inadvertence or deliberate trial tactics, they in either case did not, and do not now, constitute suffi-cient grounds for reopening the case or granting a new trial.

On the whole record, the court is satisfied it was a proper exercise of its discretion to deny the motion to reopen. *See, e. g., United States v. Dossey,* 558 F.2d 1336, 1339 (8th Cir. 1977); *United States v. Webb,* 533 F.2d 391, 395 (8th Cir. 1976); *United States v. Aiken,* 373 F.2d 294, 300 (2d Cir. 1967) (factually on point). The motions therefore lack merit. For the convenience of the Court of Appeals, the court's discussion and disposition of defendants' motions on this point from the published memorandum, 442 F.Supp. 1213 at pages 1223, 1224 and 1225 are reproduced and attached as a Supplement A.

## II. *Claimed Communication between Court and Jury*

In its Memorandum Opinion, 442 F.Supp. 1213, at p. 1226, the District Court wrote in response to this claimed ground for post-trial relief:

The claim of the court's communication with the jury absent defendants and their counsel is without any foundation. The court did not communicate directly or indirectly with the jury except in the courtroom with all parties present. When the jury retired for the day about 5:45 P.M. on November 2, they told the Marshal they wanted to consult the court. The Marshal telephoned the court at his home. The court told the Marshal to tell the jurors if they wanted further instructions or counsel to communicate with him in writing the next morning when all necessary parties would be present. No written request for further instructions or consultation was received.

As the Court of Appeals observed in its Order of Limited Remand, defendants apparently do not dispute this statement of the District Court but now claim a marshal had unauthorized communication with the jury.

On remand, the court received the testimony of Deputy U.S. Marshals James H. Redpath and John Butler and a portion of a

television interview with Jury Foreman Canfield and Juror Doyle in lieu of their live testimony.

A reading of the testimony of the two marshals (pp. 3 thru 25) and the statement of the jurors (pp. 30· ·31) does not support a claim of unauthorized communications between the marshals and the jury foreman.

The marshal, Redpath, faithfully reported to Jury Foreman Canfield the court's direction to the jury that if they wanted further instructions to communicate with the court in writing the next morning when the persons required to be present would be in the courtroom.*

The court is satisfied, and a reading of the record on remand supports the conclusion, that there was no unauthorized communication and there is no merit in the claim.

On the records made at trial and on remand, the motions for Judgment of Acquittal or a New Trial are DENIED.

---

* There is a minor inconsistency between the testimony of the marshals and the statement of Juror Canfield. Juror Canfield's statement that the marshal said, "The judge has read the note" was obviously in error because the judge was at his home some seven miles away and both marshals testified that they had not read the note. But an exact recollection and recital of the conversation held two days before reasonably could not be expected under the pressure of a television interview and the excitement attendant upon the reaching of a verdict in a highly publicized criminal trial.