104 F.3d 356
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Alberto Luis CUARTAS, aka Luis A. Cuartas, Defendant-Appellant.
 Nos. 96-1164(L), 96-1377(CON).
 United States Court of Appeals, Second Circuit.
 Dec. 12, 1996.
 
 Appeal from the United States District Court for the Eastern District of New York (Sifton, Ch. J.).
 APPEARING FOR APPELLEE: APPEARING FOR DEFENDANT-APPELLANT: PETER A. NORLING, Assistant United States Attorney, Eastern District of New York, Brooklyn, NY. B. ALAN SEIDLER, Nyack, NY.
 E.D.N.Y.
 AFFIRMED.
 PRESENT: VAN GRAAFEILAND, JACOBS, and CALABRESI, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York, and was argued by counsel.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgments of the district court are AFFIRMED.
 
 
 3
 A jury convicted Alberto Luis Cuartas of conspiracy to distribute and to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and of possession of cocaine, in violation of 21 U.S.C. § 841(a). The district court (Sifton, Ch. J.) sentenced him to a term of 151 months imprisonment, to be followed by four years of supervised release. Cuartas appeals his conviction on the grounds that 1) the verdict of the jury was against the weight of the evidence, 2) the jury charge on reasonable doubt and aiding and abetting was erroneous, and 3) he was denied effective assistance of counsel at trial. Cuartas also appeals his sentence, on the ground that the court's relevant conduct analysis was erroneous.
 
 I. Background
 
 4
 The evidence presented at trial showed that Laura Gordon worked as a drug courier for Javier Piedrajite beginning in 1993. In December 1994, Piedrajite told Gordon to meet a trafficker named Juan Manuel Restrepo in Miami. She did so, and agreed to deliver cocaine to New York for Restrepo in lots of 100 kilograms.
 
 
 5
 Restrepo told Gordon that her contact person in New York would be one "Alberto," and gave her Alberto's pager number. Restrepo also told Gordon to pick up a vehicle containing cocaine in Chicago and to deliver it to Alberto in New York. Gordon went to Chicago, and obtained 40 kilograms of cocaine from a member of Piedrajite's network, Lina Vasquez.
 
 
 6
 The next day, December 14, Gordon, Vasquez, and another individual loaded 39 kilograms of that cocaine into a "trap" compartment in Gordon's station wagon. The last kilogram would not fit in the trap. Gordon then drove to New York, arriving at the LaGuardia Marriott on December 15.
 
 
 7
 Later that day, Gordon reached Alberto through his pager. Alberto agreed to meet her in the lobby of her hotel. Because Gordon had never met him before, she gave him her description. Alberto and Gordon met, and Alberto--whom Gordon later identified as Cuartas--asked where the "merchandise" was. Gordon and Cuartas walked to the station wagon, and Gordon told Cuartas where the trap compartment was located. The two then drove in separate cars to a residential neighborhood, where Gordon showed Cuartas how to work the trap compartment. At this time, the cocaine was revealed. Cuartas then drove Gordon back to her hotel in the station wagon, and dropped her off. Before Cuartas left in the station wagon, Gordon told him that she needed him to confirm the amount and quality of the cocaine.
 
 
 8
 The next day, Cuartas returned Gordon's page, telling her that there were 39 kilograms of good quality, and asking why there was not more. Gordon explained that the 100 kilogram deliveries would begin shortly. Cuartas said he had spoken with Restrepo regarding payment. On December 17, Cuartas told Gordon that he had some of the money, and they arranged to meet the next day. When they met, Cuartas told Gordon that he had $115,000 for the cocaine. Gordon contacted Piedrajite, because the amount was lower than expected; Piedrajite spoke to Restrepo and told Gordon to accept the money, and that she would be returning to New York to collect the rest of the money and to deliver more cocaine.
 
 
 9
 Gordon and Cuartas walked to the station wagon, where Cuartas had hidden the cash in the trap compartment. Gordon transferred the money to her suitcase and her person; Cuartas then drove her to the airport, and she flew to Chicago. In Chicago, her car was vandalized in a hotel parking lot. Chicago police who responded to the incident discovered the cash in a trap compartment later that day and Gordon was arrested.
 
 
 10
 Upon Gordon's arrest on December 18, she agreed to cooperate with the DEA. DEA agents had recovered from her possessions a slip of paper with Cuartas' pager number on it, as well as a telephone list containing that pager number next to the name "Alberto." An agent placed a call to the number. A few minutes later, a man identifying himself as "Alberto" answered the page and agreed (in a recorded conversation) to meet an associate of Gordon's (who would be an undercover agent) the next day at the LaGuardia Marriott to give the associate the receipts.
 
 
 11
 The next day, Cuartas arrived at the Marriott. Agents activated his pager to confirm that he was Alberto, and followed him to a pay phone in Queens, less than one block from his apartment, where he placed a phone call. Agents then asked Cuartas for identification. Both Cuartas and his girlfriend consented to a search of their apartment. The agents took Cuartas' pager and his wallet, the keys to the station wagon with the trap compartment, and $30,000 in cash. The station wagon was parked near Cuartas' apartment, and had Illinois plates registered to Laura Gordon. Cuartas' wallet contained several business cards, including Restrepo's.
 
 
 12
 Cuartas claimed that the keys were to a friend's car and that the car was being repaired. He also said that the money belonged to a friend named Roberto, who had left it with him, but that he did not know Roberto's last name.
 
 II. Discussion
 
 13
 On appeal, Cuartas contends that the jury verdict was against the weight of the evidence. A conviction must stand if, after the "evidence [is] viewed in the light most favorable to the government and all permissible inferences [are] drawn in its favor," the evidence could "convince any rational trier of fact of the defendant's guilt beyond a reasonable doubt." United States v. Martinez, 54 F.3d 1040, 1042 (2d Cir.) (citations omitted), cert. denied, 116 S.Ct. 545 (1995). Cuartas is unable to carry this "very heavy burden." See United States v. Soto, 716 F.2d 989, 991 (2d Cir.1983).
 
 
 14
 Cuartas further argues that the jury instructions on reasonable doubt were erroneous. Cuartas takes issue with two passages in the reasonable doubt charge:
 
 
 15
 Unless using common sense you are able to find beyond a reasonable doubt that the defendant committed at least one of the crimes with which he is charged then you must find him not guilty.
 
 
 16
 Proof beyond a reasonable doubt is proof that would cause a prudent person to hesitate to act in the important affairs of his or her own life.
 
 
 17
 Cuartas argues that the charge was "wrong, opposite, and confusing." However, Cuartas did not object to the charge in any respect now raised on appeal. Consequently, we review the charge for plain error. See Fed.R.Crim.P. 52(b); United States v. Pabisz, 936 F.2d 80, 83 (2d Cir.1991).
 
 
 18
 The first contested passage is erroneous--if at all--only insofar as it raises the government's burden of proof. If an "error" benefitting the defendant is indeed an error, it certainly does not constitute plain error.
 
 
 19
 As for the second challenged passage, we agree that the language is unclear, but we note that neither defense counsel nor the prosecutor found anything wrong with it at trial, nor did any of the jurors ask for clarification of the instruction. In evaluating the jury charge, we examine "the charge as a whole, and assess whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the standard of proof beyond a reasonable doubt." Vargas v. Keane, 86 F.3d 1273, 1277 (2d Cir.1996) (internal quotations eliminated). The burden of proof charged passim was reasonable doubt. The definition of reasonable doubt is scrambled, but there is no sensible, grammatical reading of the passage that would lighten the burden expressed by the ordinary meaning of the words "reasonable doubt." There are cases that approve and disapprove particular definitions of reasonable doubt, but Cuartas cites no authority for the proposition that the absence of an elucidating definition of that term is plain error. We decline to announce such a rule.
 
 
 20
 Cuartas also asserts that the aiding and abetting instruction failed to instruct the jury as to the element of intent; however, the element of intent was included in the charge.
 
 
 21
 Cuartas contends that he was denied effective assistance of counsel at trial. To prevail on a claim of ineffective assistance of counsel, Cuartas must show that: (1) his counsel's representation fell below "an objective standard of reasonableness"; and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984); United States v. Eisen, 974 F.2d 246, 265 (2nd Cir.1992). Judicial scrutiny of defense counsel's performance must be "highly deferential," including a strong presumption that the representation was adequate. Strickland, 466 U.S. at 689.
 
 
 22
 Specifically, Cuartas contends that trial counsel failed to offer the defense that the evidence of a conspiracy before the arrest came exclusively from Gordon, who later turned informant. Cuartas argues that the evidence of conspiracy pre-arrest indicated only that Cuartas had conspired with Gordon. After Gordon became a government informant, Cuartas could not have conspired with her. This argument--which Cuartas contends his lawyer should have advanced--ignores the fact that the conspiracy involved others as well: Restrepo and Piedrajite.
 
 
 23
 Cuartas also argues that trial counsel was ineffective for failing to object to the jury charge. As noted earlier, however, the charge was so unclear that a failure to object was not unreasonable. Cuartas has not shown that trial counsel's conduct was unreasonable, nor that any prejudice resulted from the alleged errors.
 
 
 24
 Finally, Cuartas argues that the relevant conduct analysis was erroneous because the court predicated the defendant's base offense level upon the 39 kilograms of cocaine delivered to Cuartas by Gordon, despite the fact that the cocaine was never recovered. The commentary to U.S.S.G. § 1B1.3(a) provides:
 
 
 25
 the defendant is accountable for all quantities of contraband with which he was directly involved, and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of criminal activity that he jointly undertook.
 
 
 26
 Commentary, Application Note 2 (emphasis added). The evidence showed that Gordon was present when the 39 kilogram shipment of cocaine was stuffed into the trap compartment of the station wagon, and that the defendant, who received it, confirmed that quantity to Gordon. It may not have availed defendant if, upon receiving the cocaine, he had expressed surprise that there was so much; here, however, he expressed surprise that there was not more. It is therefore quite clear that Cuartas was directly involved in the possession of the 39 kilograms of cocaine within the meaning of U.S.S.G. § 1B1.3(a)(1)(A), and Application Note 2 thereto, and that Cuartas was properly held accountable for that entire quantity.
 
 
 27
 We have examined all of Cuartas' remaining contentions, and find them to be without merit. For the reasons set forth above, the judgments of the district court are AFFIRMED.